958 F.2d 371
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Pauline BOURCIER and James Troyer, Plaintiffs-Appellants,
v.
CITY OF MANISTEE; Jack Garber; Robert Hornkol; John
Willlet; and R. Ben Bifoss, Defendants-Appellees,
Floyd E. Wetherell; Wendy Kapp; David Schuelke; and
Thomas Schuelke, Defendants-Appellees.
 Nos. 91-1461, 91-1462.
 United States Court of Appeals, Sixth Circuit.
 March 17, 1992.
 
 Before BOGGS and ALAN E. NORRIS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This case arises from the July 17, 1987 death of Mark Bulley, who drowned in Lake Michigan while swimming at a beach located in the City of Manistee. Following the drowning, plaintiffs Pauline Bourcier, representative of Bulley's estate, and James Troyer, Bulley's friend who had been swimming with him when he drowned, filed three lawsuits against a host of defendants in federal district court. One of the suits was brought against the United States. That case was dismissed on summary judgment and is not the subject of this appeal. Plaintiffs filed a second suit against the City of Manistee, the Director of the Parks Department, the Director of the Department of Public Safety, and the City Manager. A third suit was brought against Floyd Wetherell, the Assistant Director of the Manistee Department of Public Safety, and nine city lifeguards. The two suits against the city and its various employees are the subject of this consolidated appeal. The district court granted summary judgment in both cases. We affirm.
 
 
 2
 * The action against the City of Manistee and certain city officials alleged the following counts: nuisance; gross negligence for failure properly to appoint and equip the personnel at the beach; gross negligence for failure to adhere to standards set forth in unspecified state and federal statutes; conspiracy against an undefined class of persons, including Bulley and Troyer, in violation of 42 U.S.C. §§ 1983 and 1985, 28 U.S.C. § 1343, and in violation of the plaintiffs' constitutional right to equal protection; and gross negligence for failure to warn of an undertow. Plaintiffs' action against Wetherell and the lifeguards, which was brought pursuant to Michigan's Wrongful Death Act, M.C.L. 600.2922, and 42 U.S.C. § 1983, alleged gross negligence on the part of Wetherell for failure to warn of an undertow, for failure to abide by various unspecified statutory standards, and for failure properly to equip and assign lifeguards to the beach. Plaintiffs further alleged a deprivation of their equal protection and due process rights, in violation of § 1983, against Wetherell and the lifeguards.
 
 
 3
 Plaintiffs unsuccessfully asked the district court to consolidate these two cases. Each case proceeded separately before Judge Bell and the defendants in both cases moved for summary judgment. The district court granted summary judgment in favor of the defendants in both cases. In the City action, the plaintiffs dropped their § 1985 claim but also requested leave to amend their complaint. The court dismissed plaintiff's § 1983 equal protection claim and, finding the § 1983 claim wholly unsupported, found that any attempt to amend the § 1983 complaint would be futile. In the Wetherell action, the court found that plaintiffs could not prevail on either their equal protection or their due process § 1983 claims. The court again found that any attempt to amend the complaint would be futile. Since the court dismissed all of the federal claims in both cases, it declined to exercise jurisdiction over the remaining state claims. The two cases were consolidated for this appeal by the plaintiffs.
 
 
 4
 Bourcier argues that the district court erred by dismissing the equal protection claims. She also claims that the court erred by failing to pass on plaintiffs' first amendment claim of interference with the familial relationship. Finally, Bourcier contends that the district court erred in denying plaintiffs' motion to amend their complaint.
 
 II
 
 5
 This court reviews a grant of summary judgment de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate when there exists no genuine issue of material fact and one party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988).
 
 
 6
 The plaintiffs' lawsuits center on allegations of negligence on the part of the City of Manistee and its various employees. On July 17, 1988, at about 6:00 p.m., Bulley and Troyer went bodysurfing at the First Street Beach in Manistee. The City had lifeguards on duty at the beach from 11:00 a.m. to 5:00 p.m. on that day. The lifeguards generally post undertow warning signs at the beach when conditions warrant warning swimmers. It was the understanding of the lifeguards that these signs were to be locked up in the bathhouse at the close of the day.
 
 
 7
 Bulley had been at the beach earlier in the day and the high waves caused him to return that evening to go bodysurfing with his friend Troyer. When the boys returned to the beach that evening, the wave level had increased. The high waves, along with the breakwater at the beach, created a substantial undertow. After swimming in the water for some time, the boys went deeper into the lake. At some point, Bulley began to panic. When Troyer's attempt to get Bulley into shallow water failed, he left the lake and went for help. Ultimately, Bulley and a would-be rescuer drowned. Plaintiffs claim that these deaths resulted from various acts of negligence on the part of the city and its employees.
 
 
 8
 In the Wetherell action, the plaintiffs argued that the defendants' failure to warn of the existing undertow and to provide a lifeguard and lifesaving equipment at the beach deprived Bulley and Troyer of equal protection and due process in violation of § 1983. In the City of Manistee action, the plaintiffs argued that the defendants' negligent acts deprived them of equal protection in violation of § 1983. Both opinions rely on the same reasoning. The district court found the § 1983 equal protection claims unsupported.
 
 
 9
 To prevail on a § 1983 action for violations of equal protection, a person must show intentional discrimination because of membership in a particular class, not merely that he was treated unfairly as an individual. Joyce v. Mavromatis, 783 F.2d 56, 57 (6th Cir.1986). The guarantee of equal protection is not a source of substantive rights or liberties, but rather a right to be free from invidious discrimination in statutory classifications and other governmental activity. Harris v. McRae, 448 U.S. 297, 322 (1980).
 
 
 10
 In this case, the plaintiffs allege that the decedents were members of the class of citizens who regularly used the First Street Beach as invitees for recreational purposes. However, as the district court properly found, plaintiffs are unable to prove any class-based discrimination. The § 1983 claim is based solely on alleged negligence and § 1983 "imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." Baker v. McCollan, 443 U.S. 137, 146 (1983).
 
 
 11
 In addition, the court correctly found that plaintiffs were unable to support their § 1983 due process claim. A negligent act of an official causing unintended loss of or injury to life, liberty or property is insufficient to support a due process claim under § 1983. Jones v. Sherrrill, 827 F.2d 1102, 1106 (6th Cir.1987). In order to state such a claim, the facts must indicate "gross negligence" on the part of the official." Id. at 1106. "Gross negligence is something more than simple negligence with the addition of a vituperative epithet." Ibid. A § 1983 claim is triggered if the official intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow. Ibid.
 
 
 12
 The plaintiffs in this case have not presented facts that indicate that the defendants were guilty of "outrageous conduct or arbitrary use of government power." Ibid. All of the acts that plaintiffs allege, such as failure to provide warning of an undertow or premature removal of signs, even if true, are acts of simple negligence. The district court was correct, then, in holding that plaintiffs had not stated a § 1983 claim for a due process violation.
 
 
 13
 The district court also held that it would be futile to allow plaintiffs to make their requested amendments to their claims. Plaintiffs wanted to amend their § 1983 claim to state more clearly the equal protection claim and to add a first amendment claim. The first amendment claim was based on a theory of deprivation of the right to associate in the family. This claim and the other suggested amendments would not have stated a legitimate § 1983 claim. They would all still have rested on simple negligence based on these facts and the court was correct in denying the amendments.
 
 III
 
 14
 For the reasons stated above, we AFFIRM the judgments of the district court.